**Ursula HILDEBRAND**

v.

**HOLYOKE MUTUAL FIRE INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

May 24, 1978.

Thompson, Willard & McNaboe by Thomas R. McNaboe (orally), Steven Devine, Asst. Dist. Atty., Portland, for plaintiff.

Theodore H. Kurtz, South Paris (orally), for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

The plaintiff [1] commenced this action seeking to recover damages [2] resulting from a fire which destroyed her dwelling house and its contents, both of which had been insured against fire loss by the defendant. The defendant counterclaimed alleging it was entitled to recover $15,872.72 from the plaintiff.[3]

The sole issue raised by plaintiff's appeal is whether the presiding Justice, when ordering judgment for the defendant, erred in ruling that it would be "against public policy and violative of the provisions of the insurance contract" to allow recovery by the plaintiff even "where the evidence demonstrates that she was completely innocent of any wrongdoing."

We sustain the appeal.

The jury was entitled to find the following facts. In the fall of 1965 the plaintiff and her husband purchased a home in Portland, taking title as joint tenants. They made a down payment on the house and gave the Maine Savings Bank a real estate mortgage as security for the balance of the purchase price.

---

1. There was a stipulation of dismissal as to Count III of the complaint which had included the plaintiff's husband, Gerard Hildebrand, as a party to the action.

2. The plaintiff alleged her loss to be $65,600.

3. The defendant had paid this amount to the Maine Savings Bank pursuant to the terms of the mortgage clause in the plaintiff's fire insurance policy.

In 1968 the defendant issued a fire insurance policy on the house and its contents, which named both the plaintiff and her husband as "Named Insured." On January 15, 1970, Mr. Hildebrand conveyed his interest in the realty and its contents to the plaintiff. Three months later the defendant endorsed the policy deleting the husband's name as a "Named Insured."

In June, 1971, the insured's residence was destroyed by fire which had been intentionally ignited by Mr. Hildebrand. The Justice presiding characterized the plaintiff's conduct as being "completely innocent of any wrongdoing."

## I

The policy provided in pertinent part as follows:

"This entire policy shall be void if, whether before or after a loss, the *insured* has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." (emphasis added)

■ Under the "General Conditions" of the policy in paragraph 2, the term "Insured" is defined as follows:

"The unqualified word 'insured' includes (1) the Named Insured and (2) if residents of his household, his spouse, the relative of either, and any other person under the age of twenty-one in the care of an Insured."

It is clear that Mr. Hildebrand, as the spouse living in the household of the named insured at the time of the fire, is an "insured" within the terms of the policy. *Kipp v. Hurdle,* 307 So.2d 125 (La.App. 1st Cir. 1974).

The defendant therefore contends that since plaintiff's husband is an insured under the policy, the trial Court correctly held

that his fraud in the form of arson voids the policy with respect to the named insured, the plaintiff.

We do not agree.

■ We construe the term "insured" in the first above quoted clause of the policy to mean a specific insured, namely, the insured who (1) is responsible for causing the loss and (2) is seeking to recover under the policy. *Pawtucket Mutual Insurance Company v. Lebrecht,* 104 N.H. 465, 190 A.2d 420 (1963). We therefore conclude that the instant policy allows recovery by the "Named Insured" for the loss despite the fact that it resulted from the intentional act of another "insured." *See Arenson v. National Automobile and Casualty Insurance Co.,* 45 Cal.2d 81, 286 P.2d 816 (1955); *Walker v. Lumbermens Mutual Casualty Co.,* 491 S.W.2d 696 (Tex.Civ.App.1973).

We reach this result irrespective of whether the interests of the plaintiff and her husband in the destroyed property are deemed to be joint or several.[4] *Howell v. Ohio Casualty Ins. Co.,* 130 N.J.Super. 350, 327 A.2d 240 (Super.Ct.App.Div.1974). As the Court held in *Howell,* 327 A.2d at 242:

"The significant factor is that the responsibility or liability for the fraud—here, the arson—is several and separate rather than joint, and the husband's fraud cannot be attributed or imputed to the wife who is not implicated therein."

Accordingly, we hold that the trial Court incorrectly determined that the husband's arson was a bar to recovery under the policy by the innocent wife.

## II

■ Our interpretation of the policy is not in conflict with the general rule that it is contrary to public policy to allow one to benefit from his own wrongdoing. As

---

**4.** At trial the evidence disclosed that the plaintiff and her husband agreed that the husband should convey his interest in the real and personal property to the plaintiff in order to protect it from the husband's creditors. We intimate no opinion concerning the validity of these conveyances.

pointed out in *Pawtucket Mutual*, 190 A.2d at 423:

"There is no such policy against insurance to indemnify an insured against the consequences of a violation of law by others without his direction or participation . . . ."

 The defendant, *citing Erlin-Lawler Enterprises, Inc. v. Fire Insurance Exchange*, 267 Cal.App.2d 381, 73 Cal.Rptr. 182 (1968), argues that since Mr. Hildebrand has been relieved of his obligation on the note to the Maine Savings Bank, "such a resulting financial benefit" defeats any recovery under the policy.

Assuming that Mr. Hildebrand remained obligated on the note after he had conveyed his interest in the mortgaged property to the plaintiff,[5] it does not appear that by allowing the plaintiff recovery under the policy we would be benefiting Mr. Hildebrand to an extent that violates public policy. In *Erlin-Lawler, supra*, 73 Cal.Rptr. at 185, the Court said that in order to insure that no one takes advantage of his own wrong,

"[a]n analysis must be made in each case to see if the arsonist will benefit by the recovery on the policy, either directly or indirectly."

It does not follow that because Mr. Hildebrand may have benefited by the defendant's payment to the bank, he will also benefit by the plaintiff's recovery on the policy. The Court in *Erlin-Lawler, supra*, 73 Cal.Rptr. at 186, went on to point out that

"[m]ere family relationship of the arsonist which does not bestow a property right or other direct financial benefit in the proceeds of insurance does not bar a recovery."

The entry is:

Appeal sustained.

Remanded for entry of judgment for the plaintiff in accordance with this opinion and for trial on the issue of damages.

---

5. It is not clear from the record whether Mr. Hildebrand remained obligated on the note.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

When asked this question at trial, Mr. Hildebrand indicated that he did not know.