## ÆTNA INS. CO. v. NORRIS BROS., Inc.
### No. 4575.

Circuit Court of Appeals, Fourth Circuit.
Feb. 3, 1940.

Stephen Nettles, of Greenville, S. C., and Joseph L. Nettles, of Columbia, S. C., for appellant.

E. M. Blythe and P. A. Bonham, both of Greenville, S. C., for appellee.

Before PARKER, and SOPER, Circuit Judges, and WEBB, District Judge.

SOPER, Circuit Judge.

Norris Bros., Inc., secured a judgment in the District Court against Aetna Insur-

ance Company in a suit to recover for a fire loss under an insurance policy which covered a woodworking plant at Greenville, South Carolina. Five suits were instituted against five insurance companies, and four of the suits were tried together before a jury, and it was stipulated that the outcome thereof would determine the liability of the fifth insurance company under its policy. The jury found that the property had been damaged in the sum of $73,600, specifying the items of damage as follows:

To the building.................. $10,000
To hardware and shuttles........  59,000
To other items, in the aggregate..  4,600
                                 _____
                                  $73,600

Judgment was entered against the insurance companies for their respective proportionate shares of the liability, and it was stipulated that only the appellant herein need appeal, and that the final judgment would be binding upon all.

We are concerned only with the damages to the shuttles and to the building. It is urged that the finding of the jury as to each was excessive; as to the first, because the verdict was much greater than the real value of the shuttles, and as to the second, because the jury were not properly instructed as to the extent of the insurer's liability under the policy for damages to the building.

■ Little need be said on the first point. The jury's allowance for the shuttles alone, assuming that they gave the insured all that it claimed for the hardware, was $43,627.61. The insured claimed a loss of $47,238.80 for this item, while the defendant's experts estimated a loss of only $4,228.35. The difference was due to the fact that 49,-665 shuttles were inventoried as damaged, and that the company's appraisers listed 36,611 of these as obsolete, and therefore worth only 25c a piece at the time of the fire, while witnesses, experienced in the business testified on behalf of the insured that the larger number of shuttles, although not readily salable at the time of the fire, were not obsolete but might reasonably be expected to find a market in the future. The insurers did not ask the court to instruct the jury that they could not allow more than 25c a piece for the so-called obsolete shuttles, and do not now contend that a verdict somewhat in excess of that figure would have been unreasonable; but they say that the jury's allowance for this item

was so extravagant that it was error on the part of the District Judge to overrule the motion for a new trial offered in respect thereto. It is obvious that this contention relates to a question of fact which is not reviewable in this court. In Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 481, 53 S.Ct. 252, 254, 77 L.Ed. 439, Justice Brandeis said: "The rule that this Court will not review the action of a federal trial court in granting or denying a motion for a new trial for error of fact has been settled by a long and unbroken line of decisions; and has been frequently applied where the ground of the motion was that the damages awarded by the jury were excessive or were inadequate. The rule precludes likewise a review of such action by Circuit Court of Appeals." See also, Chesapeake & O. Ry. Co. v. Proffitt, 4 Cir., 218 F. 23, 28; Kimball Ice Co. v. Hartford Fire Ins. Co., 4 Cir., 18 F.2d 563, 567, 52 A.L.R. 799; Pocahontas Coal & Coke Co. v. Cook, 4 Cir., 74 F.2d 878.

The second question is more serious. The value of the building as fixed by the policies was $11,200, and the amount of the insurance thereon was $10,000. The building was partially destroyed. A competent contractor testified on behalf of the insurance companies that the value of the building after the fire, estimated on the basis of its continued use as a building, was $6,315. The insured offered no testimony tending to show the value of the damaged structure on this basis, but its witnesses merely testified that the value of the material in the building, if it should be demolished, would not exceed two or three hundred dollars. When this testimony was offered, the defendants objected, but the District Judge received the testimony with the understanding that the rule of law to be applied in determining the amount of the recoverable loss on the building would be settled later after argument.

At the conclusion of the testimony, the jury were instructed that in order to determine the amount of the damage to the building under the South Carolina law, they should take the agreed value of the building as stated in the policies and subtract from it "the value of the salvage or proportion of the house remaining after the fire" and the result would be the amount of the recoverable damage. Salvage was defined to mean that which was saved from destruction in the fire. The jury were also told that they could not take into consideration the sound

or actual value of the building at the time of the fire or the cost of repairs or of reconstruction, and that the method for ascertaining the recoverable loss outlined above was a proper one even though the result should be more than the estimated or actual cost of the repairs or of reconstruction.

This instruction was based upon § 7977 of the South Carolina Code of 1932, as interpreted by the Supreme Court of the State, which provides: "No fire insurance company or individuals writing fire insurance policies, doing business in this State, shall issue policies for more than the value to be stated in the policy, the amount of the value of the property to be insured, and the amount of insurance to be fixed by insurer and insured at or before the time of issuing said policies, and in case of total loss by fire, the insured shall be entitled to recover the full amount of insurance and a proportionate amount in case of partial loss: Provided, Two or more policies written upon the same property shall be deemed and held contributive insurance; and if the aggregate sum of all such insurance exceed the insurable value of the property, as agreed by the insurer and the insured, in the event of total or partial loss, each company shall be liable for its pro rata share of said insurance." The instruction given by the District Judge followed quite closely the language approved in the recent decisions of the Supreme Court of South Carolina in Bruner v. Automobile Ins. Co., 165 S.C. 421, 164 S.E. 134, and Fowler v. Merchants' Fire Assur. Corp., 172 S.C. 66, 172 S.E. 781, wherein the previous decisions of that court were reviewed and explained. The insurance companies, nevertheless, objected to the instruction in view of the testimony offered by the owner as to the value of the building after the fire, and the court was asked to tell the jury that the word "salvage", in the instruction, should not be construed to indicate the junk value of the material in the building. The objection and the request were overruled, and hence counsel for the insured were free to argue to the jury that the damage to the building should be determined by deducting from $11,200, the agreed value in the policy, the sum of two or three hundred dollars, the value of the materials in the building if demolished, and that since the difference between these figures exceeded $10,000, the face value of the policy, the full amount should be allowed. The jury adopted this view and returned a verdict for $10,000, thereby converting a loss admitted to be partial into one that was total to all intents and purposes; and the contention of the insurance companies was rejected that the damage should be calculated by deducting from the stated value of the building in the policy the value of the building as it stood after the fire. Had this contention been sustained, the allowance for the building would have been $11,200 less $6,315, or $4,885.

In our opinion, the instruction given to the jury, although a correct exposition of the law of South Carolina, led the jury to the wrong result. It was of course correct to follow the statute of South Carolina, as interpreted by the Supreme Court of the State, in ascertaining the extent of the liability of the insurance companies under their policies for the damage to the building[*], and it was therefore proper to tell the jury that under a valued policy the basis for calculating the damage to a structure by fire is the value of the structure as stated in the policy, and not its actual value at the time of the fire. But the South Carolina Supreme Court has never gone so far as to say that in the case of the partial destruction of a building, the utility of the portion which remains as an incomplete structure shall be disregarded in ascertaining its value. When the court speaks of "the value of the salvage" it refers to the value of that which was saved from the fire; and if that which was saved is part of a building, it must be valued as such, and not at the figure which the bare materials would bring if it should lose its character by demolition.

The purpose of the statute, as shown by the discussion of the court in Bruner v. Automobile Ins. Co., 165 S.C. 421, 426, 164 S.E. 134, is to protect the insured from the uncertainty which may arise as to the value of property after its destruction by fire; and hence the mandate of the statute is that the value shall be stated in the policy, and the ruling of the court is that the actual value or cost of the property, or the cost of reconstructing it, may not be considered in adjusting a loss. Nothing in the statute, however, requires that the ordinary rules of valuation shall be departed from in valuing what remains after the partial destruction of a building, or that it shall be valued for

---

[*] Niagara Fire Ins. Co. v. Raleigh Hardware Co., 4 Cir., 62 F.2d 705.

the material which it contains rather than at its intrinsic worth as a useful place of business or habitation.

So much of the verdict as pertains to the building therefore cannot stand. It was agreed during the argument at the bar of this court that if we should reach this re- sult, the defect might be cured by the filing of a remittitur by the appellee and by the affirmance of the judgment reduced by the sum of $5,115, that is to say, the difference between $10,000, the amount allowed by the jury on the building, and $4,885, the amount which they should have allowed under the testimony. The judgment of the District Court will therefore be affirmed, provided that the appellee files a remittitur in the sum of $5,115 within thirty days after no- tice to counsel of the filing of this opinion, the costs of the case to be divided; but if such remittitur is not filed, then the judg- ment will be reversed, the costs to be paid by the appellee. See, Mullins Lumber Co. v. Williamson & Brown L. & L. Co., 4 Cir., 255 F. 645.

Reversed nisi.