**UNITED STATES FIRE INSURANCE COMPANY et al., Appellants,**

**v.**

**William E. CARTER, Appellee.**

**No. 17646.**

Court of Civil Appeals of Texas, Dallas.

May. 14, 1971.

Rehearing Denied June 4, 1971.

------◆------

Robert Lee Guthrie, Johnson, Guthrie & Hunter, Dallas, for appellants.

William F. Billings, Billings, Weaver, Pierce & Gilley, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Action on fire insurance policies. On February 10, 1967 United States Fire Insurance Company of New York and Standard Fire Insurance Company of Connecticut issued their respective policies of insurance naming William E. Carter as insured. The policies covered a business building, together with its contents, located at 1603 South Denley Drive, Dallas, Texas, against the hazard of fire and also insured against loss of earnings during the interruption of business following a loss by fire for such time as would reasonably be required to restore the property. The limit of liability on each policy was $33,000. While the policies were in full force and effect on March 28, 1967 a fire occurred which caused damage to the building and contents. Mr. Carter asserted his claim for the fire damage to the building and contents, together with claim for loss of earnings during interruption of business, and when such claim was denied by the insurance companies he brought this action in the district court seeking to enforce the contracts. The insurance companies answered, inter alia, that Mr. Carter had intentionally burned or caused the intentional burning of the property covered by the policies.

The case proceeded to trial before the court and a jury and in answer to the special issues submitted the jury found: (1) that W. E. Carter did not intentionally burn or procure the burning of the property in question; and (2) that four months would be the length of time, with the exercise of due diligence and dispatch, to be required to restore the building that was damaged in the fire to the condition it was in immediately before the fire. Both Carter and insurance companies moved for judgment on the verdict. The trial court sustained the motion by Carter and overruled the motion by the insurers, and rendered judgment against each insurance company in the sum of $19,680.01 with interest at 6 per cent from November 27, 1967. Both insurance companies appeal.

In their first three points of error appellants contend that the trial court erred in rendering judgment for the sum of $39,-360.03 but that such judgment should have been limited to the sum of $3,097.54 against each company, or the total sum of $6,195.08, representing a loss of earnings during the four months found by the jury to be the reasonable time of interruption of business following the loss. In the alternative, appellants say that the court erred in rendering any judgment against them because there was no evidence, or the evidence was insufficient, to establish the amount of appellee's complete loss under the policies.

The facts, other than those relevant to the cause of the fire, are without dispute. Appellee Carter owned and operated a grocery business known as D & S Grocery in the building located at 1603 South Denley Drive in Dallas. The building consisted of several rooms and contained a general stock of merchandise. Shortly after 10:00 p.m. on the night of March 28, 1967 Carter closed the store and departed. A few minutes later a fire ignited in the building. The Fire Department came and the fire was extinguished. The loss to the building and contents was not total. Carter returned to the premises following the fire and remained at the store all night to protect the merchandise left in the store. Carter employed an independent adjuster, Mr. Robert G. Beneke, to act for him in adjusting the loss. Beneke testified that immediately after the fire he employed part time help to assist him in making an inventory of the stock remaining. He did prepare an inventory of the stock, trade fixtures and other improvements. This list of items, together with the values, prepared by Beneke, was offered in evidence but not admitted. Numerous photographs were admitted in evidence which demonstrate the condition of the building, together with its interior, walls, flooring, fixtures, etc. Carter testified that he repaired the building following the fire, painted it, and added to the stock of merchandise.

Both appellants and appellee, acting by their adjusters, made numerous efforts to arrive at an agreement concerning the value of the property and the amount of loss caused by the fire. On December 18, 1968 the parties executed an instrument which appears to be a printed form captioned: "AGREEMENT AS TO ACTUAL CASH VALUE AND AMOUNT OF LOSS (subject to non-waiver agreement, if any, and to terms and conditions of applicable insurance policies and agreements)." The document then reveals "Re: William E. Carter, DBA D & S Grocery Date/Loss 3–28–67", actual cash value of the building is "$30,000.00" and actual cash value of "Contents" is "$30,000.00", or a total of $60,000 "Actual Cash Value". Under "Amount of Loss" is "Building" "$13,334.-45" and "Contents" "$19,830.45" or "Total Amount of Loss $33,164.95". On the same instrument is found the following: "Notation—Open Items—Loss of Earnings & Value of salvage not included in this agreement."

On December 20, 1968 the parties, through their representatives, executed another instrument entitled "AGREEMENT AS TO ACTUAL CASH VALUE AND AMOUNT OF LOSS" in which they agree that the loss and damage for earnings shall be $1,548.77 for each thirty consecutive calendar days.

Both policies of insurance contain in Section IV, entitled "BASIC CONDITIONS" under "Requirements in case loss occurs" the following:

"The insured shall give immediate notice to this Company of any loss, protect the property from further damage, separate the damaged and undamaged personal property, and furnish a complete inventory of all property insured by this policy showing in detail all costs. * * * Within ninety-one days after the loss, unless such time is extended in writing, the insured shall render to this Company a proof of loss * * *. Such proof of loss shall reveal * * * the actual cash value of each item of property and the amount of loss thereto; * * *."

Under "Appraisal" it is provided that if the insurance company and the insured fail to agree as to the "actual cash value" or the "amount of loss" then there may be an appraisal by disinterested appraisers. The policies provide that "It shall be optional with this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild, or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, * * *." The policy

also provides that: "There can be no abandonment to this Company of any property."

It appears to be without dispute that the stipulations referred to above constitute the only evidence in the record concerning the value of the loss incurred in the fire. Appellants take the position that the burden of proof was upon the appellee to establish by competent evidence the value of the property lost in the fire. They contend that the trial court was not authorized by law to render judgment for any sum other than the amounts established by the stipulation concerning loss of earnings and the jury finding as to the extent of such loss of earnings. They argue that the trial court was not justified in rendering judgment based upon the stipulation of December 18, 1968 because same was incomplete and subject to a later agreement between the parties as to the value of salvage. Appellee argues that the language of the stipulation is clear and unambiguous and constitutes an agreement between the parties establishing the actual cash value and amount of loss. He concedes that the agreement does not include the element of loss of earnings and the value of salvage and admits that it was "obviously contemplated at the time of this agreement, December 18, 1968, that there might be future agreements covering the loss of earnings and value of salvage." During oral argument before the court counsel for appellee agreed that had there been evidence of salvage the value thereof would have been properly deducted from the loss. This is obviously true since there is no evidence in the record that the insurance companies elected to take possession of the property remaining following the fire.

The crucial question presented is whether the instrument dated December 18, 1968 truly represents the intention of the parties to stipulate the value of the loss occasioned by the fire and upon which the court may properly render judgment for the full amount thereof. Following careful study of the instrument in the light of the entire record presented we are convinced that the instrument does not constitute competent evidence to establish the value of the loss and that the judgment based thereon must fall.

A stipulation is an agreement or contract between the parties made in a judicial proceeding in respect to some matter incident thereto and for the purpose, ordinarily, of avoiding delay, trouble and expense. While a stipulation is one of the favorites of the law yet to be effective it must possess the essential characteristics of a binding agreement. Being a contract the stipulation must truly express the intentions of the parties making same. A court will not construe a stipulation so as to effect an admission of something intended to be controverted or so as to waive a right not plainly agreed to be relinquished. King v. Elson, 30 Tex. 246 (1867). Moreover, a stipulation will be limited in effect to what is imported by its terms, and a conditional stipulation will not support a judgment where there is no showing that· the condition has been complied with. Board of Insurance Commissioners v. Highway Insurance Underwriters, 169 S.W.2d 541 (Tex. Civ.App., Austin 1943); H. B. Zachry Co. v. Maerz, 223 S.W.2d 552 (Tex.Civ.App., San Antonio 1949); Wyss v. Bookman, 235 S.W. 567 (Tex.Comm.App., Sec. B., 1921, approved by S.Ct.); Matthews v. Looney, 123 S.W.2d 871 (Tex.Comm.App.1939).

■ Appellee concedes this to be the law in Texas but attempts to evade the effect of the authorities cited by contending that the stipulation here under consideration was full and complete and therefore binding upon both parties. We cannot agree. When the stipulation of December 18, 1968 is regarded in its entirety it is quite obvious that the parties agreed upon the value of the loss incurred but with two specified exceptions, both of which were left for further negotiation. One exception was that of the value of loss of earnings. The parties proceeded to take care of this exception in a subsequent agreement, two days later, wherein they mutually stipulated and agreed as to the value of

each month's loss of earnings. Here again they did not fully agree because the number of months was left open and subsequently answered by the jury in Special Issue No. 2.

Concerning the second part of the exceptions and reservations contained in the original agreement which had to do with the value of salvage, we find the record to be entirely devoid of any evidence that the parties ever came to terms on this item so as to complete the agreement. While there was evidence that there was salvage remaining and appellee compiled an inventory thereof and placed a value thereon, such was never admitted in evidence. Accordingly, being incomplete and obviously leaving the item open for further negotiations, the stipulation tendered into evidence and made the basis of the trial court's judgment clearly falls within the prohibition announced by the authorities discussed above.

In addition to being incomplete the instrument, as drawn, is confusing and contradictory. Appellants contend that the language of the instrument means one thing and appellee says that it means something else. The term "salvage" as used in the stipulation is not defined in the policies of insurance. It has been judicially said that "the value of salvage" refers to the value of that which is saved from the fire. Aetna Insurance Co. v. Norris Bros., Inc., 109 F.2d 172 (4th Cir. 1940). The policies of insurance anticipate that there might be property remaining after the fire and expressly provide for appraisal thereof. There was property left following this fire but it was never appraised pursuant to the policy provisions. The parties obviously left the value of the salvage as an open item to be determined later. This was never done. Appellee argues that the insurance companies could have taken the property and disposed of it. There is no evidence that this was done. Appellants argue that they had the option to take the property but did not exercise the same and that appellee retained the property without

accounting for the value thereof which should be deducted from the total value of the loss. In such a situation we think that the stipulation relied upon by appellee falls clearly within the rule announced by our Supreme Court in Sergeant v. Goldsmith Dry Goods Co., 110 Tex. 482, 221 S.W. 259 (1920). Speaking through Chief Justice Phillips, the court said:

"A contradictory and confusing stipulation of counsel should be disregarded by a court if it stands in the way of a true determination of the rights of the parties. We do not feel called on to fathom the meaning of this ambiguous document, if it has any. It will accordingly be ignored, and the questions in the case determined without reference to it."

Since the stipulation does not meet the requirements of the law it cannot constitute probative evidence of the value of the loss. Since there is no other evidence in the record to establish the total amount of the value of the loss of the property destroyed by fire, the judgment cannot stand. We sustain appellants' second and third points of error.

However, we cannot agree with appellants' first point of error wherein they ask us to affirm the judgment to the extent of allowing appellee recovery of the sum of $6,195.08. Since appellee obviously proceeded on the theory that the stipulation of total value of the loss was effective, we think that in the interest of justice the entire judgment should be reversed and remanded for another trial.

In appellants' Points of Error Nos. 4 and 9 complaint is made of the action of the trial court in sustaining certain special exceptions to their pleadings and in excluding evidence relating to an alleged conspiracy between appellee Carter and other named parties which led to a fire which destroyed a competing store in November, 1966. We have carefully reviewed the record in connection with these points and conclude that the trial court was justified

**156**

in striking the pleadings and refusing to admit testimony since it was not shown that there was a connection between the first fire and the one which formed the basis of this litigation. Evidence of other transactions between one of the parties to the cause and a stranger is generally inadmissible under the doctrine of "res inter alios acta" which means that each act or transaction sued on should be established by its own particular facts and circumstances. It is only where it is made to appear that the other transaction is substantially similar and the same issues are involved that such testimony might be admitted. Appellants' points are overruled.

The remaining points advanced by appellants relate to procedural matters which are not likely to occur upon another trial of this case. Accordingly, we will not discuss them further.

The judgment of the trial court is reversed and the cause remanded for a new trial.